345 F.2d 757
 LOS ANGELES PAPER BAG CO., a corporation, Appellant,
v.
PRINTING SPECIALTIES AND PAPER PRODUCTS UNION, DISTRICT
COUNCIL NO. 2, NATIONAL PRINTING PRESSMEN AND
ASSISTANTS' UNION OF NORTH AMERICA,
AFL-CIO, a labor organization, Appellee.
 No. 19244.
 United States Court of Appeals Ninth Circuit.
 May 17, 1965.
 
 1
 William M. Howard, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., W. A. Caldecott, Stephen J. M. Morris, Walker, Wright, Tyler & Ward, Los Angeles, Cal., for appellant.
 
 
 2
 Leo Geffner, Levy, DeRoy, Geffner, Koszdin & Glow, Los Angeles, Cal., for appellee.
 
 
 3
 Before BARNES and ELY, Circuit Judges, and PENCE, District Judge.
 
 PENCE, District Judge:
 
 4
 The positions taken by both the appellant (Employer) and the appellee (Union) in this case force us to exclaim, like Mercutio: 'A plague o' both your houses.' The facts here are simple but each party has engaged in a skirmish of semantics in an attempt to gain more than either was entitled to under the bargaining agreement. Bot for such attitudes, this action would not have reached the courts, at least not yet.
 
 
 5
 On August 19, 1963, Employer discharged twelve employees, all Union members. Their discharge was based upon Employer's contention that, without authorization, they had engaged in a work stoppage or walkout on August 17, 1963, thus violating Article I of the parties' collective bargaining agreement (Agreement) which provides that 'there shall be no strikes, lock-outs, walkouts, slow-downs or other interruptions of work during the life of this Agreement * * *' On August 20th, those discharged filed an 'EMPLOYEE GRIEVANCE' form stating as the nature of the grievance: 'We were discharged without just cause,' and sought reinstatement with pay. Employer rejected the same as a grievance 'because it concerns a matter not subject to the grievance procedure and/or arbitration as provided by Art. I, Sec. 4,' of the Agreement. This section states in part:
 
 
 6
 'In the event of any strike or stoppage in violation of this Agreement, the Company may discipline any employees' participation therein and any such discipline shall not constitute a grievance within the meaning of Article II. The Company will discuss with the Union any discharges under this provision but such discharges will not be subject to grievance procedure and arbitration.'
 
 
 7
 While the precise basis for the grievance does not appear on the form filed, Union claims (and that such a claim was then made is not denied by Employer) that twelve employees had been given express permission by their supervisor to leave early on August 17th due to the working conditions which existed in the area where the employees were working. Employer however, apparently seized upon the words of the grievance: 'discharged without just cause', and has adamantly refused to submit to arbitration the issue of whether or not an unauthorized, and therefore illegal, work stoppage took place on August 17th. Not to be outdone, the Union semantically fudged not only in the way the grievance was worded, but also in its briefs-- after first insisting that the issue to be arbitrated is whether or not the work stoppage of August 17th was illegal-- by thereafter stating that the issue to be resolved is whether the discharges were for just cause-- thus injecting a question on the quantum of discipline into the only issue upon which there could possibly be arbitration, viz., was there an illegal work stoppage?
 
 
 8
 Bypassing such embellishment, the position of the Union has been such that this court, as did the trial court, construes the issue of 'just cause' as set out in the initial grievance notice, to have been equated to the issue of legal vs. illegal work stoppage on August 17th.[1]
 
 
 9
 From the beginning and throughout this case, Employer has unilaterally assumed that an unauthorized, i.e., illegal, walkout or work stoppage took place on August 17th. If such assumption were true in fact, then the act of the employees in leaving work would clearly be stoppage in violation of the Agreement and the matter of discharge thereafter would be a subject of discipline and would not be a basis for grievance procedure within the meaning of Article II.
 
 
 10
 Unfortunately for Employer's position, the Agreement does not have any clause giving Employer an absolute, uncontestable unilateral right to decide when a strike or unauthorized work stoppage has in fact occurred. There is nothing in the Agreement however, which prevents the Employer from making such an initial assumption, when a work stoppage has taken place, and proceeding to act thereon. Nevertheless, if, as was done here, the employees affected by Employer's claim of unauthorized work stoppage challenge the factual truth of such assumption by filing a claim of grievance, then an issue is presented which, under the Agreement, must be submitted to arbitration.[2]
 
 
 11
 Paraphrasing the words of this court in Beckley v. Teyssier, 332 F.2d 495 (1964), to sustain Employer's contention would be to emasculate the arbitration provision of the contract whenever the Employer saw fit to unilaterally interpret any action of the employees as a walkout or stoppage. That is not what the Agreement says.
 
 
 12
 Article II, 'Grievances and Arbitration,' Section 2, provides that:
 
 
 13
 'Issues subject to the grievance procedure are limited to differences arising out of the interpretation, application or alleged violation of any of the express provisions of this Agreement.'
 
 
 14
 Employer's claim of unauthorized walkout, on its face was but a claim of alleged violation of the express provisions of Article I, Section 4, that there should be no unauthorized walkout. If the arbitrator should determine that an unauthorized, i.e., illegal, stoppage did take place on August 17th, then no matter what discipline may have been imposed upon the employees-- whether it was discharge, no rehire, or any other discipline-- the same could not be considered by the arbitrator nor thereafter referred to arbitration.
 
 
 15
 The alleged violation of Article I, Section 4, is unequivocally entitled to be determined by way of the grievance procedure and arbitration set forth in the Agreement, and the district court correctly granted the Union's motion for summary judgment for an order directing Employer to submit this grievance to arbitration.[3]
 
 
 16
 Employer also contends that the district court erred in ordering that the proceedings on the Employer's counterclaim for damages allegedly sustained by the walkout, be stayed until the arbitration, above referred to, is completed. Employer's counterclaim is founded upon precisely the same basic issue that must first be resolved by the arbitrator, viz., was the walkout unauthorized? This is the hard core of the counterclaim.
 
 
 17
 As indicated above, the plain language of the arbitration provisions of Article II of the Agreement shows that the right to file a grievance and to compel arbitration thereof is vested exclusively in Union and certain of the appellant's employees. The grievance having been filed, Employer is forced to submit the issue of the legality of the work stoppage to arbitration and the arbitrator has the power to decide that issue with a finality that is binding upon both parties.[4]
 
 
 18
 Conversely, it is equally clear that the Agreement does not bind Employer to arbitrate its claims for damages against the Union for breach of the no strike, or stoppage provisions of the Agreement, if the arbitrator determines that there as in fact an unauthorized work stoppage in violation thereof.[5]
 
 
 19
 Here, Employer may properly submit the issue of damages to a trial court but that court cannot try the question of damages allegedly flowing from the stoppage until the arbitrator has first resolved the basic issue in favor of Employer.[6]
 
 
 20
 Although the Supreme Court has not ruled upon the precise question before this court,[7] that Court has unequivocally stated in the Steelworkers trilogy[8] that when an issue properly submitted to arbitration under provisions of a collective bargaining contract has been decided by the arbitrator, a court cannot thereafter overrule his decision on that issue. Thus, in the instant case, the resolution of the issue of the illegality of the work stoppage, upon which Employer's claim for damages in the Federal court is predicated, has been unequivocally granted to the arbitrator by virtue of the Agreement, and unless and until the arbitrator has decided that issue in favor of Employer, the Federal court is powerless to consider Employer's claim of damages allegedly resulting therefrom.
 
 
 21
 For the trial court to proceed with the counterclaim before that basic issue has been resolved would mean it had overridden the express terms of the Agreement and arrogated unto itself powers therein specially reserved to the arbitrator. This the district court cannot do.
 
 
 22
 While we agree with Employer that the clearly limiting terminology of the arbitration provisions of the Agreement[9] forecloses consideration of any question of Employer's claim for damages by the arbitrator,[10] nevertheless, until the arbitrator has ruled upon the work stoppage question, the Federal court may not act upon the problem of Employer's claim for damages.
 
 
 23
 The district court correctly held that Employer was not entitled to any relief on its counterclaim, at least until the arbitrator's decision had been made.
 
 
 24
 The orders appealed from are affirmed.
 
 
 
 [1]
 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)
 
 
 [2]
 'Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree * * * come within the scope of the grievance and arbitration provisions of the collective agreement.' United Steelworkers of America v. Warrior & Gulf Nav. Co., supra at 581, 80 S.Ct. at 1352
 
 
 [3]
 International Molders & F.W.U. v. Susquehanna Cast. Co., 283 F.2d 80 (3rd Cir. 1960)
 
 
 [4]
 United Steelworkers of America v. Warrior & Gulf Nav. Co., supra. United States v. Moorman, 338 U.S. 457, 462, 70 S.Ct. 288, 94 L.Ed. 256 (1950)
 
 
 [5]
 Cf. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 243, and note 5 at 245, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962)
 
 
 [6]
 United Textile Workers v. Newberry Mills, Inc., 315 F.2d 217 (4th Cir. 1963); Plumbers & Steamfitters Union, Local No. 598 v. Dillion, 255 F.2d 820 (9th Cir. 1958)
 
 
 [7]
 See note 5, supra. See also Local Union No. 721, United Packinghouse Workers v. Needham Packing Co., 376 U.S. 247, note 5 at 253, 84 S.Ct. 773, 11 L.Ed.2d 680 (1964)
 
 
 [8]
 United Steelworkers of America v. American Mfg. Co., 363 U.S. 565, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., supra; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). See also Minute Maid Co. v. Citrus, Etc., Local Union No. 444, 331 F.2d 280 (5th Cir.1964)
 
 
 [9]
 'Article II. Grievances and Arbitration 'Section 2: Issues subject to the grievance procedure are limited to differences arising out of the interpretation, application or alleged violation of any of the express provisions of this Agreement. 'Section 3: In order to be processed under the terms hereof, a grievance must be presented in writing within five consecutive working days after the occurrence of the matter complained of. The grievance shall clearly state all of the facts constituting the grievance, together with a statement of the provision of this Agreement which is alleged to have been violated. No grievance is entitled to be processed unless there is compliance with the aforementioned conditions. * * *
 'FIRST: Grievances shall be taken up between the aggrieved employee and the Plant Superintendent. * * * (No grievance) shall be considered unless the foregoing provisions are met.
 'SECOND: If no settlement is reached within five days thereafter, the grievance shall be taken up between the Plant Manager and the Shop Committee. The Plant Manager will give the Shop Committee a written answer within five days after the matter is discussed with him.
 'THIRD: If the Union does not accept the answer given by the Plant Manager, it may request that the grievance be submitted to arbitration.
 'Arbitration proceedings shall be initiated within thirty days following receipt of the Company's answer at Step 2 and the Union shall proceed promptly to process the case through to final decision, otherwise the right to arbitration is waived.'
 
 
 [10]
 Local Union No. 721, United Packinghouse Workers v. Needham Packing Co., supra; John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Atkinson v. Sinclair Refining Co., supra; Truckdrivers & Helpers Union Local 784 v. U.L.R.Y.-Talbert Co., 330 F.2d 562 (8th Cir.1964)