**WINERY, DISTILLERY & ALLIED WORKERS UNION, LOCAL 186, et al., Plaintiffs–Appellants,**

v.

**E & J GALLO WINERY, INC., Franzia Brothers Winery and Bronco Wine Company, Defendants–Appellees.**

No. 87–1875.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1988.

Decided May 27, 1988.
As Amended on Denial of Rehearing Sept. 22, 1988.

---

**1354**

John F. Henning, Jr., Henning, Walsh & King, San Francisco, Cal., for plaintiffs-appellants.

Randolph C. Roeder and Karen L. Mathes, Littler, Mendelsohn, Fastiff & Tichy, San Francisco, Cal., for defendants-appellees E & J Gallo Winery, Inc., and Franzia Bros. Winery.

Robert A. Hawley, Dretzin, Kauff, McClain & McGuire, San Francisco, Cal., for defendant-appellee Bronco Wine Co.

Before KOELSCH and LEAVY, Circuit Judges, and BRYAN, District Judge.[*]

KOELSCH, Circuit Judge:

E & J Gallo Winery, Franzia Brothers Winery and Bronco Wine Co. ("the Wineries") discharged nine employees for allegedly engaging in violent strike misconduct. The Union denied that the employees' conduct was in fact violent and filed grievances claiming violation of the just cause provision[1] of the collective bargaining agreement. The Wineries refused to grieve the discharges, claiming that the Amnesty Clause[2] expressly excluded from arbitration discipline which, in its exclusive judgment, was for violent strike misconduct. We must decide if the parties intended to submit to arbitration the threshold determination whether the conduct was in fact violent. See *AT & T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 652, 106 S.Ct. 1415, 1420, 89 L.Ed.2d 648 (1986). Because we cannot

---

[*] The Honorable Robert J. Bryan, United States District Judge, District for the Western District of Washington, sitting by designation.

1. Section XXIV, "DISCIPLINE", Paragraph 83. *See infra* p. 1355.

2. *See infra* p. 1355.

say with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute", *id.* at 650, 106 S.Ct. at 1419 (*citing United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)), we hold that the Wineries should be compelled to arbitrate whether the particular grievant engaged in violence, destruction of property or similarly egregious misconduct.[3]

We turn to the collective bargaining agreement ("CBA") to determine the scope of the arbitration clause. These are its relevant sections:

Section XXV, "GRIEVANCE AND ARBITRATION PROCEDURE",

Paragraph 90:

A. Grievances are defined as disputes about the interpretation or application of this Agreement and alleged violations of the Agreement.

Paragraph 92:

A. Arbitration may be demanded by serving notice thereof on the Chief Local Executive of the Employer in the plant concerned and upon the General President of the International Union.

.    .    .    .    .

C. The arbitrator shall have no power to add to, or subtract from, or modify any of the terms of this Agreement, nor shall he substitute his discretion for that of the Employer or the Union, nor shall he exercise any responsibility or function of the Employer or the Union. The arbitrator shall have authority to interpret wage rates and the application thereof, but he shall have no authority to create new wage rates.

D. The decision of the arbitrator shall be final and binding on all parties involved in such controversy or grievance and shall conclusively determine the dispute.

Section XXIV, "DISCIPLINE",

Paragraph 83. The Employer shall not discharge any employee without just cause.

.    .    .    .    .

Paragraph 85. If the Union or the employee consider such discharge to be unjust, the matter shall be handled in the manner more fully set forth in Section XXV hereof, provided the grievance is filed in writing with the Employer and the Union within five (5) business days after such discharge becomes effective.

The "AMNESTY CLAUSE":

1. None for strikers who engage in acts of violence, destruction of property, etc. This matter to be extracontractual (employees may assert their rights only under the National Labor Relations Act).

## I ARBITRABILITY OF THE THRESHOLD DETERMINATION

The framework for our analysis is well established. As the Court said in the famous *Steelworker's Trilogy: United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *United Steelworkers v. Warrior & Gulf Navigation Co,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), "We ordinarily will not except a controversy from coverage of a valid arbitration clause 'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" The Union contends that the district court did not apply this "lenient" standard when interpreting the contract. We disagree, but conclude nonetheless that the court erred in its determination: it cannot be said with "positive assurance" that the arbitration clause does not cover the dispute whether the strike misconduct was in fact violent.

---

**3.** The matter was brought to the district court in three separate petitions to compel arbitration of the discharged employees' grievances. Because each employer was a signatory to the same multi-employer bargaining agreement, the petitions were consolidated below. The matter was disposed of on the Wineries' joint motion for summary judgment. We have jurisdiction under 28 U.S.C. § 1291.

The presumption of arbitrability attaches by virtue of the sweeping language of the arbitration clause in Section XXV ("Grievances are defined as disputes about the interpretation or application of this Agreement and alleged violations of the Agreement."). While we recognize that this presumption may be overcome by an "express exclusion or other forceful evidence", *AT & T*, 475 U.S. at 652, 106 S.Ct. at 1420, we find neither in this case.

### A. Express Exclusion

■ The Amnesty Clause does not expressly negate the applicability of the broad arbitration clause when the parties disagree that the misconduct was violent. *See Actors' Equity Ass'n v. American Dinner Theatre Inst.*, 802 F.2d 1038, 1044 (8th Cir.1986) (*cited in Pipe Trades Council v. Underground Contractors*, 835 F.2d 1275, 1278 (9th Cir.1988)). By its very terms, the clause applies only when strike misconduct was violent.[4] As the Union correctly points out, this provision does not alter in any way the right of an employee who did not engage in "acts of violence", "destruction of property" or similar behavior to challenge his discharge as unjust under Section XXIV of the CBA. Nothing in the Amnesty Clause unambiguously confers upon the Wineries the exclusive right to determine if the triggering event in fact occurred.

The Wineries argue in substance that allowing the arbitrator to determine when violent misconduct occurs renders meaningless the Amnesty Clause. We disagree. The employers' right to unquestioned discretion in disciplining a striker will not be disturbed when the Union agrees that the misconduct was in fact violent. But in this instance, the Union denies that the conduct was violent. It is not our function to re-view the merits of the grievance. *AT & T*, 475 U.S. at 649, 106 S.Ct. at 1418. We must decide if the parties' dispute over the occurrence of the event triggering the Amnesty Clause is subject to the arbitration clause. *Id.* at 651–652, 106 S.Ct. at 1420. We conclude that it is.

*Los Angeles Paper Bag Co. v. Printing Specialties and Paper Products Union*, 345 F.2d 757 (9th Cir.1965) is dispositive. There we considered whether the existence of the event triggering the exclusion clause was properly arbitrable and concluded that it was. In that case, the exclusion clause removed from the grievance and arbitration procedures any discipline of an employee's participation in an illegal work stoppage. 345 F.2d at 758. Twelve employees were fired after leaving work early one day. The union denied that the work stoppage was illegal; it argued that a supervisor had authorized the employees' early departure due to work conditions in their area. The employer refused to grieve the matter, claiming the discharges were made pursuant to the exclusion clause. The district court held, and we affirmed, that the arbitrator must decide in the first instance whether the work stoppage was illegal. Otherwise, the employer would have unfettered discretion to characterize employee discipline as coming under the exclusion clause. Although we recognized that allowing arbitration of the threshold determination could effectively "emasculate" the exclusion clause, we concluded then, as we do now, that had the employers intended to secure such unilateral discretion, they could have done so at the bargaining table. We declined to infer such a right in the agreement. *L.A. Paper Bag*, 345 F.2d at 759.

---

**4.** In its order dismissing the action, the district court perceptively (and correctly) noted that it took "... the abbreviation 'etc.' " to mean etcetera, which according to Black's Legal Dictionary, means:

And others, and other things; and others of like character and others of the like kind; and the rest; and so on; and so forth. In its abbreviated form (etc.) this phrase is frequently affixed to one of a series of articles or names to show that others are intended to follow or understood to be included. So, after reciting the initiatory words of a set formula, or a clause already given in full, etc. is added, as an abbreviation, for the sake of convenience. And other things of like kind or purpose as compared with those immediately therefore mentioned.

*See* BLACK'S LAW DICTIONARY 496 (5th ed. 1979).

The Wineries have not directly addressed *L.A. Paper Bag* in their briefs. They argue instead that it is not controlling because they do not have unilateral discretion to decide if in fact violent strike misconduct occurred. Stressing the language of the Amnesty Clause, they point out that the National Labor Relations Board may review their decision.

■ While this is of course true, it does not distinguish or render less persuasive our earlier precedent. Employees, even those not covered by a collective bargaining agreement, have recourse to the Board. But the employees, covered here by the CBA, are entitled as a matter of contract and federal labor law policy to the benefits secured on their behalf by their union. One of those important rights is to have unresolved grievances decided by an arbitrator. *Cf. Johnson–Tombigbee Mfg. Co. v. Local 2462*, 596 F.2d 126 (5th Cir.1979) (construing exclusionary clause strictly "in order to give effect to our national policy in favor of arbitration").

The Fifth Circuit cited *L.A. Paper Bag* with approval in *Johnson*. 596 F.2d at 128. The collective bargaining agreement in that case reserved for management the right to discipline for just cause. Citing *L.A. Paper Bag*, the Fifth Circuit ruled that the exclusion rule of the management rights clause did not apply until the arbitrator determined whether just cause in fact existed. *Id.* Also cognizant that its decision might render meaningless the management rights clause, the court stated that its function was not "to construe contracts liberally in order to give effect to poorly drafted exclusionary clauses" but to "construe exclusionary clauses strictly in order to give effect to our national policy in favor of arbitration." *Id.* at 129.

The validity of a case is not the length of the list of cases which have cited it. Its value as precedent is determined by the continued validity of the propositions for which it stands in light of subsequent higher authority. The policies underlying *L.A. Paper Bag* are as compelling today as they were in 1965 when Judge Pence announced them.

### B. "Other Forceful Evidence"

■ The Wineries argue alternatively that no threshold determination of violence need be made because the bargaining history shows the Amnesty Clause was intended to cover all strike misconduct. We have reviewed the bargaining history and we disagree.

The record reveals that the Wineries' position up until the time it submitted its Final Proposal was that there was to be no amnesty at all for strikers guilty of any misconduct, violent or otherwise. But the clause finally agreed to was that submitted to the mediator after face-to-face negotiations had ceased. We think it reasonable that the union members could have interpreted the submission of this language, rather than language to the effect of "No amnesty for any stikers guilty of misconduct," as a compromise position. The Wineries' position before the submission of their Final Proposal therefore does not create a triable issue whether the bargaining history was sufficiently "forceful" to overcome the presumption of arbitrability.

## II  OTHER CONTENTIONS

The Wineries make other arguments which, if true, would allow us to affirm the district court's order. Each, however, is without merit.

■ First, the Wineries argue in the alternative that the new collective bargaining agreement was not retroactive and that the only contract binding them during the period in which both the conduct and the discharges occurred was the Amnesty Clause of the Final Proposal dated August 16, 1986 which it implemented unilaterally after negotiations had reached impasse. This argument is disingenuous.

As the Wineries concede, the new CBA is comprised of the old CBA, the tentative agreement dated July 30, 1986 (extending the old CBA during negotiations), and the Wineries' Final Proposal (containing the Amnesty Clause). If, as the Wineries contend, the new CBA was not to be retroactive, what purpose would be served by in-

cluding the Amnesty Clause in the new CBA? After all, under their view, they were not bound by a duty to arbitrate during the period the disputes arose because the old CBA had clearly expired and because there was no contention under *Nolde Brothers, Inc. v. Bakery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), that the disputes had "arisen under" the old CBA. Accepting their contentions as true, disputes concerning events during this period would not have been grievable even without the Amnesty Clause. It is illogical to assert now that the new CBA (and hence the Amnesty Clause over which the parties so furiously bargained) was not intended to be retroactive when one of its most critical provisions concerned the very events occurring during the interim period between the declaration of impasse and the signing of the new CBA.[5]

■■■ Finally, we must consider the district court's disposition of the three other claims raised in the Union's complaint: breach of contract, breach of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress. It appears the court below treated all three claims as pendent state claims and dismissed them as preempted. The Union argues that the breach of contract claim was in fact a section 301(a) claim of the Labor-Management Relations Act, 29 U.S.C. § 185(a), and that the remaining claims are independent of the CBA. The latter two claims, we conclude, are not independent of the CBA and are therefore preempted. *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993 (9th Cir.1987). The district court properly dismissed these two claims. The breach of contract claim, however, was a section 301 claim; as such, it should have been dismissed for failure to exhaust administrative remedies. Any error in dismissing it as a state claim was harmless.

We reverse that portion of the district court's order denying the Union's petition to compel arbitration and direct the district court to order the arbitrator to decide whether the particular grievant engaged in violence, destruction of property or similarly egregious misconduct. Only if the arbitrator finds that the misconduct was none of these should he arbitrate the grievances. We affirm that portion of the district court's order dismissing the remaining three claims.

AFFIRMED IN PART, REVERSED IN PART. No costs.

---

5. We note that in their "motion to dismiss or for summary judgment", the Wineries' position was that the Amnesty Clause expressly excluded these types of disputes from the arbitration clause of the new CBA. In that motion, there was no alternative argument made that the new CBA was not retroactive. It is unclear from the district court's record when the retroactivity argument was first raised.