202 Mich. App. 627 (1993)
509 N.W.2d 861
In re SLACK ESTATE (SLACK v. THE OHIO CASUALTY INSURANCE COMPANY)
Docket No. 137444.
Michigan Court of Appeals.
Submitted March 11, 1993, at Lansing.
Decided December 6, 1993, at 9:35 A.M.
Davidson, Staiger, Adair & Hill (by Steven L. Hill), for petitioners.
Brian K. Millington, for the respondent.
Before: BRENNAN, P.J., and HOOD and TAYLOR, JJ.
TAYLOR, J.
Respondent The Ohio Casualty Insurance Company, appeals as of right the judgment of the probate court awarding petitioners $250,000, the full amount of its bond, for the breach of the fiduciary duty of the estate's original personal representative. We reverse.
The deceased, a man with adult children, remarried and then passed away in April 1986. Before his death he executed a will giving his shares in the Masco Corporation to his children and making his wife (the children's stepmother) the personal representative of his estate. After his death, the children agreed that their stepmother could serve in that capacity without bond, but after she ignored their repeated requests to turn over to them the Masco Corporation stock as provided by the will, the children joined in a petition to remove their stepmother as personal representative. The probate court did not immediately remove her, but ordered her to post a bond, which she did on *629 November 19, 1987. At issue is the risk undertaken by respondent in this bond.
One month before the personal representative executed the surety bond, the stock market crashed, and the value of the stock that remained in her possession diminished. The probate court held that respondent is liable to pay for that decrease in stock value, even though the diminishment occurred before the bond was executed. We disagree.
A suretyship is a contract, and as a contract it cannot be construed to operate retrospectively. Nevertheless, petitioners rely on a construction of provisions of the Probate Code to argue that retrospective application of the suretyship is required. To reach that conclusion, they rely on MCL 700.502(1); MSA 27.5502(1). Specifically, petitioners contend that liability was triggered by the personal representative's failure to perform the duties of her office set forth as conditions of a bond in subsections a through d of subsection 1 of § 502:
(a) To collect, care for, manage and preserve all the property of the estate and to make a return to the court, within 60 days, a true and perfect inventory of all the goods, chattels, rights, credits and property of the estate or trust, which shall come to his possession or knowledge, or the possession of any other person for him.
(b) To administer the estate according to law, and out of the estate to pay and discharge all debts and charges, chargeable on the estate, or the dividends thereon, as may be ordered by the court.
(c) To render a true and just account of his administration to the court within 1 year, and at any other time when required by law or by the court; and the surety by execution of the bond guarantees that if the principal does not render an account, the surety will render it for him and on the principal's behalf.

*630 (d) To perform all orders and decrees of the court, by the fiduciary to be performed, and to pay over the residue of the estate or trust to the proper parties as ordered by the court.
However, petitioners' position fails to take into account the language of subsection 1 that introduces those conditions, which provides:
(1) If a fiduciary is required to file a bond to qualify, the fiduciary shall give a bond ... before he enters upon the execution of his trust.... [Emphasis supplied.]
Here, the personal representative was not required to file a bond in order to qualify, therefore the bond conditions in subsections 1(a) through 1(d) do not apply.
Even if the language of § 502 could properly be read into and made conditions of this bond, the statutory language itself evidences a prospective view, i.e., payment in the event of a fiduciary's failure to properly perform her duty after the time the bond was given. It would be surprising were it otherwise: it is a well-established principle in the law that, in the absence of a clearly expressed contrary intent, guaranty contracts have prospective operation only and do not cover events occurring before the date the contract becomes effective. 13 Couch, Insurance, 2d (rev ed), § 46:176, p 137, ns 12, 13, and cases cited therein; 9A Appleman, Insurance Law & Practice, § 5665, p 314, n 3; see also Leucadia, Inc v Reliance Ins Co, 864 F2d 964 (CA 2, 1988).
Further, the explicit language of the bond itself shows that the bond was a guarantee against future, not past, improprieties:
[We jointly and severally agree] to pay ... the *631 full sum of $250,000.00 if the Principal fails [not failed] to truly perform any of the duties and obligations of his appointed office or fails [not failed] to observe and keep any of the conditions imposed.... [Emphasis supplied.]
We decline to rewrite the bond, i.e., in effect predating it by approximately a month, as petitioners would have us do.[1]
Reversed.
BRENNAN, P.J., concurred.
HOOD, J. (dissenting).
I must respectfully dissent because I believe that the majority opinion has, in effect, rewritten the provisions of the bond involved.
Frederick P. Slack died testate on February 24, 1986. He was survived by his wife, Barbara Ann Slack, by two adult children from a previous marriage, petitioners Frederick P. Slack, Jr., and Roxanne Wendel, and by his ex-wife, Patricia Slack. Barbara Ann Slack was named in the will as personal representative of the estate. The will contained a specific bequest to each of decedent's adult children of one thousand shares of stock and further stated:
It is my intention that the number of shares ... bequested to my children under this provision shall be One Thousand (1000) shares as of the date of this Will. I direct my Personal Representative to also transfer to each of my children such additional shares ... which may be attributable to *632 any stock split ... [occurring] on or after the date of this Will.
A dispute developed regarding whether the children were to receive all shares attributable to stock splits or only those shares attributable to splits of their respective one thousand shares.
On April 9, 1987, the court ordered that the estate proceed under supervised administration and appointed Barbara Ann Slack as personal representative. On June 26, 1987, decedent's former wife and creditor of the estate, Patricia Slack, filed a petition to remove Barbara Ann Slack as personal representative. The adult children filed concurring briefs.
On October 12, 1987, the court ordered Barbara Ann Slack to obtain a surety bond in the amount of $250,000. The bond was not filed until November 19, 1987. In the meantime, the stock suffered a substantial drop in price as the result of market fluctuations, most notably, that occurring on "Black Monday," October 19, 1987.
On March 1, 1988, Barbara Ann Slack was removed by the court as personal representative. On December 22, 1988, after several hearings, she was held personally liable for substantial losses suffered by the estate, including losses in the value of the disputed stock.[1] On December 6, 1990, after a hearing, the court held respondent liable for the full amount of the bond.
I do not believe that the trial court erred in holding respondent liable for losses that occurred before the bond was issued.
The purpose of a fiduciary bond is to ensure that the fiduciary complies with the duty "[t]o collect, *633 care for, manage and preserve all the property of the estate and to make and return to the court ... a true and perfect inventory of all the ... property of the estate, ... [t]o administer the estate according to law, ... [t]o render a true and just account of his administration[,] ... [t]o perform all orders and decrees of the court ... and to pay over the residue of the estate or trust to the proper parties as ordered by the court." MCL 700.502(1); MSA 27.5502(1). A surety's liability on the bond is measured by "the full value of the estate of the deceased that came to the hands of the fiduciary for which he did not satisfactorily account, and for damages resulting from his neglect or maladministration, with costs." MCL 700.526(1); MSA 27.5526(1). "Unless otherwise provided by the terms of the bond, sureties are jointly and severally liable with the fiduciary and with each other." MCL 700.521(1); MSA 27.5521(1).
In this case, the bond stated that "[t]he undersigned principal, having been appointed Personal Representative, accepts the trust imposed by such appointment and, with the undersigned surety agree and bind ourselves and our heirs, Personal Representatives or successors, jointly and severally, to pay to the Judge of Probate of this Court, his or her successors in office or assigns, the full sum of $250,000.00 if the Principal fails to truly perform any of the duties and obligations of his appointed office or fails to observe and keep any of the conditions imposed upon him or her by law, court rule or order of the court." (Emphasis added.) Thus, under the terms of the bond  as under the Probate Code, MCL 700.522; MSA 27.5522  it is the fiduciary's failure "to perform an order or decree made by the court for rendering an account, upon a final settlement, or for the payment of debts, legacies, or distributive shares" *634 that triggers liability upon the bond. Nothing in the Probate Code or in the bond document limits liability to losses attributable to events occurring after the bond was issued.
In my opinion, liability is triggered not only by a fiduciary's maladministration of the estate, but by the failure to finally account for all the assets of the estate. It was the failure to finally account for the assets of the estate that gave rise to the judgment against the principal and the surety in this case. That final account occurred long after the bond was issued and not before, as argued by respondent and accepted by the majority.
The interpretation I advance is supported by cases of other jurisdictions.[2] In Estate of Camarda, 103 Misc 2d 362, 364-367; 425 NYS2d 1012 (1980), the surety was held liable for losses that allegedly occurred before the execution of the bond because the bond did not limit the surety's liability to subsequent events and because the fiduciary breached the bond by failing to turn over to the heirs their respective legacies. In Ward v Maryland Casualty Co, 140 Tex 124, 127-130; 166 SW2d 117 (1942), the surety was held liable for the fiduciary's failure to repay a "loan" taken from the minor's estate about thirteen years earlier when his wife had been the fiduciary of the estate, because when he was qualified as fiduciary it became his duty to account for the entire estate, including the amounts he owed. In Bromen v O'Connell, 185 Minn 409, 412; 241 NW 54 (1932), the court held the surety liable for a loss that antedated the bond, finding that the duty to account for the estate and make good on the loss continued until the end of the fiduciary's term. I agree with the reasoning of these cases.
*635 I acknowledge that it is often said, as does the majority, that suretyship is a contract and that, as such, it cannot be construed to operate retrospectively. Hyatt v Grover & Baker Sewing Machine Co, 41 Mich 225, 226-227; 1 NW 1037 (1879). However, "it by no means follows that this rule extends to statutory bonds, given for the protection of third parties, covering a period of time fixed by the statute." Brockway v Petted, 79 Mich 620, 626; 45 NW 61 (1890). Further, contrary to the majority's conclusion, we would not be giving retrospective effect to the bond. Rather, "[w]e simply apply the statutory language to the accomplishment of its plain purpose, which is to assure the performance of the guardian's future duty finally and faithfully to account for the moneys due from him as guardian." Bromen, 185 Minn 413.
Respondent also argues that by initially failing to request a bond, the beneficiaries waived its protection for the time before the bond was filed. I disagree.
First, this issue was not raised below and therefore was not preserved for appeal. Second, the beneficiaries joined in their mother's petition to remove the fiduciary only three months after her official appointment and three months before the stock market crash that caused most of the losses. Additionally, although respondent had no duty to inspect the court file, its failure to do so and, therefore, to discover the removal petition can only be attributed to itself.
Finally, respondent argues that it was not given notice of the hearings during which the fiduciary's substantive liability was determined and that it was therefore prejudiced and cannot be held liable for her actions. Again, I disagree.
Respondent's argument is based on the false *636 premise that it was bound by the judgment against its principal. This is not the case. Rather, although such a judgment is admissible as prima facie evidence, it "`should not be conclusive against the surety, unless he has been notified to defend, or made a party....'" P R Post Corp v Maryland Casualty Co, 403 Mich 543, 550; 271 NW2d 521 (1978) (quoting People ex rel Norris v Mersereau, 74 Mich 687, 690; 42 NW 153 [1889] [emphasis added in P R Post Corp]). The Probate Code does not guarantee the surety notice, but rather allows the court to adjourn a hearing in order to allow the surety to be heard. MCL 700.529(1); MSA 27.5529(1). I note that respondent was in fact given notice and an opportunity to be heard at the hearing of the petition to collect on the bond, but chose  apparently on the basis of its misapprehension of the law  not to present any evidence or testimony.[3]
I would affirm.
NOTES
[1] Contrary to the statement made in the dissent, we do not find or suggest that the final accounting occurred before the bond was executed. We do find that the final accounting does not trigger coverage under the bond because it operated as nothing more than an after-the-fact summary of the personal representative's indecorous acts before bonding.
[1] She was also held liable for refusing to turn over legacies, for converting estate property, for refusing to render periodic accountings, and for disobeying court orders.
[2] See generally anno: Liability of sureties on bond of guardian, executor, administrator, or trustee for defalcation or deficit occurring before bond was given, 82 ALR 585.
[3] Although the trial court also apparently believed that the prima facie case against respondent could only be rebutted by special or affirmative defenses peculiar to the surety, there is no indication on the record that respondent attempted to present evidence to rebut the prima facie case on its merits. That is, respondent did not attempt to introduce the testimony, or even an affidavit, of the attorney who drafted the will to rebut the conclusion that all shares attributable to stock splits were to go to the decedent's adult children.