**WATSON WYATT CORP.,**
Petitioner/Counter–
Respondent,

v.

**SBC HOLDINGS, INC.,**
Respondent/Counter–
Claimant.

No. CIV.05–71473.

United States District Court,
E.D. Michigan,
Southern Division.

June 30, 2006.

Thomas G. McNeill, Dickinson, Wright, Detroit, MI, for Plaintiff.

Steven M. Ribiat, Kimberly H. Allen, Butzel Long (Bloomfield Hills), Bloomfield Hills, MI, for Defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO COMPEL ARBITRATION

FEIKENS, District Judge.

Petitioner moves for judgment on its petition to compel arbitration under 9 U.S.C. § 4, the Federal Arbitration Act. For the reasons below, I GRANT in part and DENY in part the petition.

## FACTUAL BACKGROUND

Petitioner Watson Wyatt Corp. (Watson Wyatt) sells actuarial and consulting services. (Pet. ¶ 3; Answer ¶ 3.) Defendant SBC Holdings, Inc. (SBC) is the sponsor of a pension plan for the employees of the former Stroh's Brewery Company. (Pet. ¶ 4, 8, Answer ¶ 4, 8.) From 1997[1] through 2004, Watson Wyatt provided actuarial and consulting services to SBC regarding that pension plan. (Pet. ¶ 10, Answer ¶ 10.) In 2001, Watson Wyatt made a data input error that caused it to understate the pension plan liabilities, and in 2004, allegedly upon discovering the error, Watson Wyatt informed SBC of the error. (Pet. ¶ 16; Answer ¶ 16.)

After the error was made but before it was reported, data that was affected by the error was used in analyses Watson Wyatt undertook for SBC at a number of different points. (Petitioner's Suppl. Memo. 2–3.) In September and October of 2001, while SBC was considering terminating the pension plan, Watson Wyatt provided information regarding the plan's liabilities to SBC using data affected by the error. (Id. at 2; Answer ¶ 14.) Analysis affected by the error was also provided by Watson Wyatt to SBC in conjunction with stock repurchases in the spring of 2002, in late October 2002, and in 2003.[2] (Petitioner's Suppl. Memo 2–3, Respondent's Suppl. Memo, 4.)

Prior to October of 2002, the parties' business relationship was not memorialized in a written contract, although both parties stipulate that the terms of their relationship during that time did not include arbitration of disputes.[3] (Letter from Thomas McNeill, Petitioner's Counsel (Feb. 1, 2006); Letter from Steven Ribiat, Respondent's Counsel (Feb. 6, 2006).) Likewise, the parties do not dispute that there is a binding October 2002 agreement giving the "terms and conditions of engagement" presented as Exhibit A to the Petition. (Answer ¶ 11.) That agreement consists of three pages: a cover letter dated September 4, 2002 that is signed by both parties (Respondent's signature is dated October 15, 2002), and two pages of the agreement itself, which contains the following clause regarding dispute resolution:

> The parties will try to resolve any dispute or claim arising from or in connection with this agreement or the services provided by Watson Wyatt by appropriate internal means, including referral to each party's senior management. If the

---

1. Although the Petition and Answer agreed the date was 1997, Defendant SBC's Brief in Response to the Motion places the date at 1995. (Br. at 1.)

2. Although the Supplemental Briefing supplied by Watson Wyatt identifies 2003 as the only date of the stock repurchase program, based on its statements at this Court's conference of June 14, 2006, Watson Wyatt agrees that some stock redemptions actually occurred in 2002, with three happening prior to October of 2002 and two in late October, in addition to the redemptions that occurred 2003.

3. This stipulation removed the question of fact that potentially existed about whether there was an agreement to arbitrate that predated the October 2002 agreement, and Defendant also withdrew its jury demand as to the petition to compel. (Am. Jury Demand, January 21, 2006.) Therefore, no jury trial is necessary, and I can decide this motion on issues of law alone.

parties cannot reach a mutually satisfactory resolution, then any such dispute or claim will be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ('AAA') of the Federal Arbitration Act [ . . . ] (Pet. Exh. A at 2 ¶ 6.)

The cover letter to the agreement indicates that its terms and conditions become effective October 1, 2002, and states that the contract was intended to "formalize the terms of conditions of engagement" with Watson Wyatt's existing clients. *Id.*

The parties agree that a series of letters (Pet. Exhs. B, C, and D) were exchanged by the parties earlier this year, and that as a result, SBC has refused to consent to arbitration, arguing that the dispute at issue is not governed by the October 2002 agreement. (Answer ¶¶ 18–21.)

To sum up the key factual background, Watson Wyatt made an error that affected analyses it gave to SBC over a period of several years. The error affected two sets of analyses that occurred before the agreement to arbitrate was signed: the 2001 analysis relating to potential termination of the pension plan, and the spring 2002 analysis supporting a stock redemption. The error also affected analyses that took place after the agreement was signed regarding stock redemptions in late October of 2002 and in 2003. For brevity's sake, I will refer to these two categories of analyses as the pre-agreement analyses and the post-agreement analyses, respectively.

## ANALYSIS

### I. Standard for Motion to Compel Arbitration

The Federal Arbitration Act mandates that following a hearing on a petition to compel arbitration, a court must determine first if the making of the agreement to arbitrate is at issue, and second whether the failure to comply is at issue. 9 U.S.C. § 4. If either one of these is at issue, the "court shall proceed summarily to the trial thereof." [4]

In applying this statute, the Sixth Circuit has listed four threshold determinations that a court must make when considering a motion to compel arbitration, two of which are relevant here [5]: (1) determine whether the parties agreed to arbitrate; and (2) determine the scope of that agreement. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir.2005).

Here, both parties acknowledge that the October 2002 contract's arbitration clause represents an agreement to arbitrate, but disagree about whether the agreement's scope is wide enough to encompass the dispute/s at issue. Petitioner Watson Wyatt argues that the language of the arbitration agreement must be interpreted to reach conduct that predates the agreement itself, and therefore, the disputes regarding both the pre-agreement analyses and the post-agreement analyses belong in arbitration. SBC disagrees, arguing that the provision does not reach conduct that occurred before the agreement was signed. Additionally, SBC argues that because both the pre-

4. In a case dealing with an arbitration clause in a collective bargaining agreement, the Supreme Court held that when deciding whether a dispute must go to arbitration, a court has "no business" considering the merit or lack thereof of the underlying dispute. *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Instead, the function of the court is limited to "ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Id.* at 567–68, 80 S.Ct. 1343.

5. The remaining two determinations involve the assertion of federal statutory claims that may be non-arbitrable; neither party asserts this is an issue here.

agreement analyses and post-agreement analyses were flawed due to a pre-agreement error, the entirety of the dispute is not subject to arbitration.

In order to decide the scope of the clause, I first turn to the question of whether the agreement of October 2002 was intended to apply to all past dealings as well as those going forward, as this single question could decide the case.

## II. Whether the Arbitration Clause Was Intended to Apply to Pre–Agreement Analyses

The language of the arbitration provision has no explicit term specifying whether the agreement is intended to apply to or exclude the past relationship as well as the relationship going forward, so that cannot be used to determine whether the actions are within the scope of the arbitration agreement. *Cf.*, *Winery, Distillery & Allied Workers Union, Local 186 v. E & J Gallo Winery, Inc.*, 857 F.2d 1353, 1357–58 (9th Cir.1988) (amnesty clause was included for sole purpose of excluding behavior during strike from new agreement's arbitration clause). Therefore, some interpretation of the language is necessary. The Sixth Circuit has not decided a case similar to this, where the question is whether a broadly-worded arbitration agreement, arising in a context in which there was no prior existing written agreement between the parties, applies to conduct that occurred before the contract was executed.[6] Binding precedent, therefore, offers no case that is directly on point, but does give

some general principles to follow. Those general rules of interpretation are complicated to apply in this case, because as discussed below, at first glance, the two rules I am bound to apply appear to conflict.

### 1. General Principles

■ On one hand, when a contract contains an arbitration clause, "any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568, 576 (6th Cir.2003), quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). To state this principle another way, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), cited for this proposition by *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir.2003).

■ On the other hand, for more than 125 years, it has been the rule that contracts in Michigan "cannot be construed to operate retrospectively." *In re Estate of Frederick Slack*, 202 Mich.App. 627, 629,

---

**6.** The Sixth Circuit has interpreted an arbitration clause very similar in language to that here, but in a different factual context. In *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369 (6th Cir.1999), the parties had signed regular annual agreements, and added an arbitration clause in one of those agreements. The case includes language stating that the contracts "were essentially forward-looking," and limited the temporal scope accordingly. The Sixth

Circuit's interpretation, however, depended on a factual finding not true here. The Sixth Circuit stated that reading the arbitration clause to encompass pre-contract conduct was an error because there was no language indicating an intent to "supersed[e] prior annual contracts." *Id.* at 372–73. Here, there were no prior written contracts, so this precedent is of limited value in determining how similar language should be interpreted here.

509 N.W.2d 861 (1993), citing *Hyatt v. Grover & Baker Sewing Machine Co.*, 41 Mich. 225, 226–27, 1 N.W. 1037 (1879). "[W]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally [ . . . ] should apply ordinary state-law principles that govern the formation of contracts." *First Options v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), citing *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005). The Supreme Court itself has applied general principles of common law when interpreting ambiguous language in an arbitration provision. *E.g., Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62–63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (applying the "common law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it.") [7] The exception to this rule is when the court is faced with "silence or ambiguity about the question [of] whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement," in which case the rule that the court should err in favor of finding arbitrability applies. *First Options v. Kaplan*, 514 U.S. 938, 944–45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). *First*

*Options* also teaches that "the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter." *Id.* at 945, 115 S.Ct. 1920.

Watson Wyatt cites several cases in which courts have construed similarly silent agreements in favor of arbitrability in support of its argument that the clause should be found to be ambiguous, and therefore the presumption in favor of arbitrability should apply.[8] I will discuss key persuasive precedents now, and then return to the question of whether this arbitration clause reaches the pre-agreement analyses.

## 2. Persuasive Precedents on Temporality

None of the precedents discussed below, which are from the Second and Tenth Circuits, are entirely decisive, because all depend on the intent and language of the particular contracts at issue, as well as factual contexts that vary slightly or significantly from that of this case. I will discuss the three Second Circuit precedents in chronological order before discussing the Tenth Circuit case.

In *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.1972), the Second Circuit found that an arbitration clause in the constitution of the New York Stock Ex-

---

**7.** I note that Watson Wyatt drafted the language at issue in this contract.

**8.** Most cases cited by Defendant SBC in favor of its position are less directly applicable, because they involve parties that had more than one written agreement, so I do not address them in depth. *See George Washington Univ. v. Scott*, 711 A.2d 1257 (D.C.App.1998) (arbitration clause added in 1995 to health plan was labeled as a "change" and thus did not apply to dispute over 1994 treatment); *Hendrick v. Brown & Root*, 50 F.Supp.2d 527, 533 (E.D.Va.1999) (contractual language that was only in present tense or forward-looking

did not show a clear intent to imply a waiver of terms of previous discontinuous employment contract); *Choice Sec. Sys. Inc. v. Lucent Techs., Inc.*, 141 F.3d 1149, 1998 WL 153254 (1st Cir.1998) (a single contract in a series of one-year contracts was not intended as a renegotiation of fundamental terms of the ongoing relationship); *cf. Litton Financial Printing Div. v. NLRB*, 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) (absent express language to the contrary, arbitration provision does not reach action that accrued after the expiration of the contract, only those actions that occurred while the contract was in force).

change encompassed a dispute that arose prior to the plaintiff joining the New York Stock Exchange. Noting that "[t]he drafters of the New York Stock Exchange arbitration clause intended it to be very broad," since the provision applied to " 'any controversy' between members, the Second Circuit noted that it was intended to keep all disputes, regardless of when the underlying conduct occurred, out of the courts." 453 F.2d at 1212. Noting that language restricting the temporal reach of the provision could have been included, the Second Circuit also read the arbitration clause at issue in comparison with a different clause in the same document that was much narrower in the class of disputes it governed. *Id.* Ultimately, the court found it was the purpose of the provision to keep the members' disputes with each other out of the courts, and thus, ordered arbitration.

In 1999, the Second Circuit again faced an argument about retroactive effect of an arbitration provision when a corporation in a dispute claimed that the events involved in the dispute predated a 1994 agreement containing an arbitration clause, and therefore it should not face arbitration. *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir.1999). Noting that as in *Coenen,* the "arbitration clause here similarly does not contain any temporal limitation," the Second Circuit noted that the relevant question was not when the dispute arose, but whether the dispute related to any obligation or claimed obligation under the 1994 Agreement. *Id.* Finding that the claims of the corporation involved fraudulent inducement of the 1994 Agreement, the Second Circuit found that the claims did relate to the 1994 agreement, and thus, compelled arbitration. *Id.*

Finally, in *Mehler v. Terminix Int'l Co.,* 205 F.3d 44 (2d Cir.2000), the defendant had sprayed the plaintiffs' home for bugs on July 19, 1996, and did not return to complete the two-day treatment until nearly a week later. *Id.* at 45–46. During the first visit, the defendant punctured an oil line, causing damage to the plaintiffs, which was the underlying dispute. *Id.* The plaintiffs sued, and argued that they were not bound by the arbitration provision, because their complaint centered on the conduct that occurred under the prior "oral contract" and was not reached by the written agreement. *Id.* at 48. The Second Circuit disagreed, finding that the text of the written agreement showed that it constituted a single "unified contract" for service on both days, because it referenced a service order that included the two-day treatment. *Id.* The Second Circuit went on to find, however, that even if the contract was not a "unified" one, because the agreement provided specifications for how the two-day work would be done, the presumption in favor of arbitrability would require the same result. *Id.*

This case has some other language that would go against arbitration, however. Both conclusions of the Second Circuit rely on the fact that the final written agreement contained terms that impacted the services rendered on July 19, when the agreement was signed. The Second Circuit's opinion implicitly endorsed the district court's reasoning that had the written agreement not covered those services, arbitration would not be required. *Id.* at 48 ("the flaw in [the district court's reasoning] is that it assumes that the Agreement covers only the period after the two-day services had been rendered.") In other words, the Second Circuit implied that had the fact pattern been as the district court had interpreted it to be (an oral agreement lacking any arbitration provision governing the time period in question, followed by a later written agreement that did not contain an express retroactivity provision), the district court's decision to apply the state

law rule that contracts do not apply retroactively absent express language to the contrary would have been correct. *Id.*

The Tenth Circuit has also found arbitration to be mandated despite a challenge on the basis that the dispute predated the arbitration agreement. *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330 (10th Cir.1993). In *Zink*, the agreement at issue read, "[a]ny controversy between [the parties] arising out of [plaintiff's] business or this agreement shall be submitted to arbitration." Broadly construing that phrase in favor of coverage, the Tenth Circuit found that

> [a]n arbitration clause covering disputes arising out of the contract or business between the parties evinces a clear intent to cover more than just those matters set forth in the contract. Plaintiff's contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced. Such a suggestion runs contrary to contract principles which govern arbitration agreements.

*Id.* at 332 (citations omitted). The Tenth Circuit opinion cited the decision of *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir.1982), which the Supreme Court overruled in part on other grounds, for support as to its conclusions on temporality, namely that the phrase "any controversy between us arising out of your business" showed a clear intent to cover any dispute, regardless of the time period in which the conduct occurred.

### 3. Application of the Federal and State Rules

■ Returning to the application of the rules and cases, there is a key point that stands out to me when trying to weigh the principles that I must use: the federal rule that courts should generally find in favor of compelling arbitration applies only in cases where the language of the contract itself is doubtful, unclear, or ambiguous regarding the question before the court. *See* 475 U.S. at 650, 106 S.Ct. 1415 ("any doubts"); 514 U.S. at 944–45, 115 S.Ct. 1920 ("ambiguity" and "the law would insist on clarity.") This case, however, presents the situation in which it may be said with positive assurance that the silence in the arbitration clause is not susceptible of another interpretation, because the law declares that courts "cannot" interpret contractual silence to include retroactivity. *Highlands Wellmont*, 350 F.3d at 576, quoting *AT & T Techs., Inc.*, 475 U.S. at 650, 106 S.Ct. 1415; *In re Estate of Frederick Slack*, 202 Mich.App. at 629, 509 N.W.2d 861, citing *Hyatt v. Grover & Baker*, 41 Mich. at 226–27, 1 N.W. 1037. Since the silence of this arbitration clause is not a source of ambiguity, doubt, or lack of clarity, the need to apply the general rule in favor of arbitration in those situations never arises.[9]

■ Moreover, the Supreme Court has clearly stated its position that a court may not "construe [an arbitration] agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Perry*

**9.** It is true that *First Options v. Kaplan* listed silence alongside ambiguity as a situation in which a court should apply the presumption in favor of arbitration, but I believe read in context with the wealth of other Supreme Court statements on this issue, it is clear that the Court included silence because it usually gives rise to doubts, ambiguity, or uncertainty about what the parties' intent was. 514 U.S. at 944–45, 115 S.Ct. 1920. This is the rare situation in which silence can have only one interpretation, and therefore, does not give rise to any doubt or confusion about the parties' intent. The parties' intent is the principle that governs, and only when that intent is not clear is the general rule in favor of arbitrability applied. *AT & T Techs., Inc.*, 475 U.S. at 648, 106 S.Ct. 1415.

*v. Thomas,* 482 U.S. 483, 492–93, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).[10] It has also stated that the "first principle" in deciding this kind of case is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs, Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also Atkinson v. Sinclair Ref. Co.,* 370 U.S. 238, 242, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962)[11].

■ Here, because long-standing law is clear, explicit, and absolute on the point that silence cannot be interpreted to allow retroactivity, I find the contract cannot be construed in such a way as to create a question as to whether the arbitration clause was retroactive in its scope. Therefore, because the parties did not agree to arbitrate disputes regarding damages arising from pre-agreement analyses, I DENY the motion to arbitrate these claims.

## III. Whether the Post–Agreement Analyses Is Subject to Arbitration

Respondent SBC argues that because the error that gave rise to all the damages occurred prior to the signing of the agreement, all analyses in dispute are not subject to mandatory arbitration. (SBC Supplemental Br. at 5.) Since I have already found that disputes regarding the pre-agreement analyses are not arbitrable, I will address this argument only in context

of disputes regarding the post-agreement analyses.

■ There are very few, if any, legal claims that can be brought forward unless the claimant has actually suffered damage due to the conduct at issue. *See, e.g., Sault Ste. Marie Tribe of Chippewa Indians v. United States,* 288 F.3d 910, 914 (6th Cir.2002) ("It is axiomatic that there cannot be a case or controversy, in the constitutional sense, without an 'injury in fact.' "). Thus, until damages accrued from the error, SBC could not bring a claim against Watson Wyatt arising out of the error. The disputes that center around damages resulting from post-agreement analyses are correctly characterized as disputes arising after the agreement was signed. The parties did agree to arbitrate such disputes, and therefore, I GRANT the motion to compel arbitration as to those claims.

## CONCLUSION

The law compels me to split this case in two, sending approximately half of it into arbitration (those disputes regarding post-agreement analyses), and allowing the other half of it to be resolved outside of arbitration (those disputes regarding pre-agreement analyses). This seems to me the situation least advantageous to both parties, and the least judicially efficient

**10.** The Second Circuit has interpreted *Perry v. Thomas* as "dictat[ing] that we apply state law in determining whether the parties have agreed to arbitrate." *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 46 (2d Cir.1993). It went on to say that the Federal Arbitration Act "preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate." *Id.*

**11.** I also note that the contract, which was signed on October 15, 2006, gives October 1,

2006 as its effective date. (Pet.Exh. A, 1.) Therefore, there is an explicit retroactivity present in the contract at issue: the contract was retroactive to October 1, 2006. If the parties believed that whenever the agreement was signed, it would cover their entire business relationship, even conduct that occurred before the date of the agreement, such a provision would not have been needed or included. By stating an effective date predating the actual date of agreement, the contract itself shows that the parties did not expect that the agreement would reach backward in time to encompass the pre-agreement conduct.

outcome as well. The parties will now have to either spend more time and effort arguing over the forum in which these disputes will finally be resolved or will have to resolve them in multiple forums, which will require the maximum resources from the decision-makers as well. I cannot help but be reminded of the story of Solomon, and I hope one party or the other will stop insisting on its own preferred forum for resolution and therefore reach a situation both parties ought to prefer to the alternative of division. Yet despite significant efforts by this Court to encourage settlement, both directly and by giving the parties time and opportunity to facilitate the dispute, there seems a determination to resolve this matter in the most expensive and time-consuming way possible.

For the reasons stated above, I GRANT in part and DENY in part the Petitioner's Motion for Judgment on Its Petition to Compel Arbitration. I therefore ORDER SBC to submit to arbitration those disputes involving the post-agreement analyses, in the manner specified by the agreement of October 2002. I DENY the motion to compel arbitration of those disputes involving the pre-agreement analyses.

**IT IS SO ORDERED.**