# STATE OF MICHIGAN

# COURT OF APPEALS

GLORIA KATO KARUNGI,

      Plaintiff/Counter-Defendant-
      Appellant,

v

RONALD LEE EJALU,

      Defendant/Counter-Plaintiff-
      Appellee.

UNPUBLISHED
September 26, 2017

No. 337152
Oakland Circuit Court
Family Division
LC No. 2016-841198-DS

Before: O'BRIEN, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Plaintiff/Counter-Defendant (Plaintiff) appeals as of right the opinion and order denying her motion for summary disposition, wherein she sought custody of frozen embryos created with defendant/counter-plaintiff (defendant) and granting defendant's motion for summary disposition. We remand to the trial court for further proceedings.

Plaintiff and defendant are the parents of a daughter who was naturally conceived. Plaintiff and defendant were never married, and despite the end of their relationship in 2013, in 2015, they entered into contractual agreements with an in vitro fertilization (IVF) clinic for the cryopreservation of embryos generated through their genetic contributions. Their daughter has been diagnosed with sickle cell disease, and plaintiff seeks implantation of an embryo in order to give birth to a healthy child and then use the stem cells from that child's umbilical cord for transplantation to their daughter to cure her disease.

The present dispute arose when defendant no longer wished to follow through with the IVF. At that time, the parties were in a dispute for support of their daughter, and plaintiff initiated this matter in conjunction with that dispute. Plaintiff did not file a separate or amended complaint, but rather filed a motion as part of her support action contending that the embryos were subject to a custody determination. A consent judgment was entered under the "DS" (support case) designation that addressed parenting time, custody, and support for the parties' daughter, but it did not resolve the embryo dispute. Rather the consent judgment included a paragraph that recognized the existence of a controversy pertaining to the embryos and stated that the "embryo issue is preserved for resolution by this Court in this case." After the judgment

-1-

was entered, defendant filed a motion for summary disposition with respect to plaintiff's argument for custody of the embryos, which the trial court granted pursuant to MCR 2.116(I)(2). In a written opinion, the trial court pointed out that the parties were arguing a child custody case under a support case designation and, as such, held that it did not have subject-matter jurisdiction. The trial court reasoned, "[T]he Family Support Act-as written-provides no authority for this court to consider the disposition of embryos in the context of a child support case. Accordingly, the court has no legal authority to award 'custody' of the embryos to either party in this case."

Initially, we note that the trial court's reasoning that it did not have subject-matter jurisdiction based on the fact that this case was captioned as a support dispute rather than a custody dispute is misplaced. Contrary to the trial court's reasoning, "the form of a caption is not particularly significant[.]" *Howard v Bouwman*, 251 Mich App 136, 146; 650 NW2d 114 (2002). Rather, " 'We look to the relief asked.' " *Id*. quoting *Stamp v Mill Street Inn*, 152 Mich App 290, 296; 393 NW2d 614 (1986).[1]

Both parties and the trial court ignored the fact that the parties entered into a contract that governed the parties' interest in the contested embryos.[2] The contract provides in relevant part as follows:

> *Each embryo* cryopreserved as a result of in vitro fertilization *shall be considered the joint property of both recipient and partner who are deemed to be the legal owners*.
>
> If at any time during [sic] one partner should die, the survivor will furnish a valid death certificate and the surviving partner shall have sole ownership of embryos.
>
> If both parties should die, all embryos will be thawed and discarded unless one of the above options is clearly defined by both partners in a valid pre-directive (will).

---

[1] It also bears noting the trial court added to the misclassification of this dispute. Plaintiff's original pleadings sought to obtain child support from defendant for the parties' daughter and, thus, was identified and properly labeled a "DS" case. When the consent judgment was entered, it reserved resolution of the "embryo issue" for the trial court. Plaintiff filed various documents with the trial court pertaining to this issue, and yet was never instructed or guided by the trial court on the filing of these pleadings or their deficiency regarding the classification. It was not until the matter had proceeded and various motions for summary disposition had been filed that the trial court asserted its lack of authority to address the embryo issue "under the Family Support Act."

[2] We need not consider the Amicus Curiae argument regarding the life status of an embryo because the nature and stage of the proceedings do not require it.

If at any time the partners divorce, a copy of the final divorce decree must be provided and the embryos will be handled in the manner set forth in the divorce decree.

We further agree that *any and all disputes relating to this agreement or its breach shall be settled by arbitration* in Ann Arbor Michigan in accordance with the then current rule of the American Arbitration Association and judgment upon the award entered by the arbitrators may be entered in any court having jurisdiction. Costs of arbitration as determined by the arbitrator must be paid to the prevailing party.  [Emphasis added.]

Two identical contracts containing these provisions were signed by both parties on two separate occasions: the first on October 9, 2015, and the second on November 22, 2015.[3]  Because (1) the parties agreed that they each had an interest in the embryos and that they would resolve disputes related to that agreement or its breach by arbitration, and (2) plaintiff sought to extinguish defendant's interest in the embryos, the trial court should have considered this case a contract dispute.  See *id*.

"An unambiguous contract must be enforced according to its terms."  *DaimlerChrysler Corp v Wesco Distribution*, Inc, 281 Mich App 240, 248; 760 NW2d 828 (2008) (citation and quotation marks omitted).  Without deciding the ethical or policy questions embedded in this case, the parties clearly intended for the embryos to be "joint property" and for any dispute regarding the embryos to be "settled by arbitration."  See *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 212; 737 NW2d 670 (2007) ("We respect[] the freedom of individuals freely to arrange their affairs via contract by upholding the fundamental tenet of our jurisprudence . . . that unambiguous contracts are not open to judicial construction and must be enforced as written, unless a contractual provision would violate law or public policy.") (Citation and quotation marks omitted; alterations in original).

The trial court concluded that it lacked subject-matter jurisdiction on the basis that it had "no legal authority to" decide the dispute.  But the trial court never addressed the contract between the parties, including the part in which the parties agreed that the embryos were joint property.[4]  If the trial court had addressed the contract and properly considered this case as a contract dispute, it may have reached the opposite conclusion.  See *Winkler by Winkler v Marist Fathers of Detroit, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket No. 152889); slip op at 12 ("The existence of subject matter jurisdiction turns not on the particular facts of the matter before the court, but on its general legal classification.").

The circuit court is a court of general jurisdiction, MCL 600.151, and has "original jurisdiction in all matters not prohibited by law . . .," Const 1963, art 6, § 13.  "Circuit court

---

[3] Both contracts were filed as exhibits in the trial court.

[4] We use the term "joint property" because that is the term utilized by the parties.

jurisdiction over a particular subject matter is denied only by constitution or statute." *Campbell v St John Hosp*, 434 Mich 608, 614; 455 NW2d 695 (1990). "In construing such statutes or constitutional provisions, retention of jurisdiction is presumed and any intent to divest the circuit court of jurisdiction must be clearly and unambiguously stated." *Id*. While the family division of the circuit court has "sole and exclusive jurisdiction" over matters enumerated in MCL 600.1021, that statute does not clearly and unambiguously state that the family division is precluded from addressing other matters. Moreover, MCL 600.1005 states that "[a] circuit judge serving in the family division of circuit court retains all the power and authority of a judge of the circuit court."[5]

Yet we need not reach a decision as to whether the trial court had jurisdiction over this dispute because the record before us is so underdeveloped that we are unable to resolve the parties' underlying contract dispute. For instance, it is unclear on the record before us whether one or both of the parties waived the arbitration provision of their contract, see *Salesin v State Farm Fire & Cas Co*, 229 Mich App 346, 356-357; 581 NW2d 781 (1998), or otherwise acted in a way that may have impliedly amended the contract, see, e.g., *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 312; 550 NW2d 228 (1996) ("We hold that the unambiguous contract language controls unless the past practice is so widely acknowledged and mutually accepted that it amends the contract."). Accordingly, we decline to decide whether the trial court had subject-matter jurisdiction, see *Fred J Schwaemmle Const Co v Dept of Commerce, Corp & Sec Bureau*, 420 Mich 66, 81 n 3; 360 NW2d 141 (1984) (declining to address an issue that was "unnecessary to the resolution of" the case), and remand to the family division to determine whether it has subject-matter jurisdiction over a contract dispute involving joint property between two unmarried parties and, if so, to allow the parties to present evidence on the issue, see *Grebner v Clinton Charter Twp*, 216 Mich App 736, 745; 550 NW2d 265 (1996) ("Because the appropriate award in the present case would turn on . . . a matter apparently not argued before the circuit court, we remand to allow the parties to present evidence regarding this issue.").

---

[5] It is also worth noting that, because the trial court in this case included language in the original consent judgment preserving the "embryo issue" for itself, the family division was the proper venue in which to raise the issues presented in this case. Otherwise, the civil division of the circuit court would have arguably lacked jurisdiction, and any order from the court would have been void. See *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992).

Remanded to the trial court to determine whether it has subject-matter jurisdiction over the contract dispute between the parties and, if so, to allow the parties to present evidence on the issue. We do not retain jurisdiction.[6]

/s/ Colleen A. O'Brien

---

[6] Plaintiff raises a variety of other issues on appeal. However, all of plaintiff's arguments are based on her misconception that this is a custody dispute rather than a contract dispute. In light of our decision to remand to the trial court for further proceedings, it is unnecessary to address plaintiff's remaining claims.