*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CRAIG INGRAM,

        Plaintiff-Appellee,

and

ZMC PHARMACY LLC, LIVONIA CARE
PHARMACY INC., KEVIN T. CRAWFORD, D.O.,
PC, and CITIZEN PHARMACY,

        Intervening Plaintiffs,

v

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendant-Appellant,

and

ANTHONY BOWIE, and MOORE BROTHERS
PLUMBING, HEATING AND COOLING INC.,

        Defendants.

UNPUBLISHED
February 1, 2024

No. 364352
Wayne Circuit Court
LC No. 20-006323-NI

Before: CAVANAGH, P.J., and RICK and PATEL, JJ.

PER CURIAM.

In this first-party no-fault action, defendant, Esurance Property and Casualty Insurance Company (Esurance), appeals as of right the trial court's order enforcing a purported settlement agreement between Esurance and plaintiff, Craig Ingram (Ingram). We reverse and remand.

This case arises out of a motor vehicle collision. Ingram brought this lawsuit against Esurance for failure to pay personal injury protection (PIP) benefits. On July 21, 2022, Ingram

-1-

and Esurance participated in a settlement conference with the trial court. At the conference, Esurance made an offer of $100,000 to resolve the claim, which Ingram did not accept.

On August 12, 2022, counsel for Ingram e-mailed counsel for Esurance: "My client wants to still try and resolve this claim. The current demand is $195,000.00. Please let me know if we can resolve or what your client's counter is." Ingram's counsel sent Esurance's counsel multiple follow-up e-mails, inquiring whether Esurance had a counteroffer to Ingram's $195,000 offer. On September 14, 2022, Ingram's counsel sent Esurance's counsel a text message, again asking if Esurance had an offer to resolve the dispute. Esurance's counsel responded by text: "I asked but nope" and "Client doesn't want to extend any new offers at the moment."

On September 20, 2022, Ingram's counsel e-mailed Esurance's counsel, stating: "This will confirm our client's acceptance of $100,000 to settle the PIP case." Esurance's counsel responded, informing Ingram that the $100,000 offer was no longer on the table. Ingram then filed a motion requesting the trial court to enforce the purported $100,000 settlement agreement. The trial court granted Ingram's motion on the basis that the text sent by Esurance's counsel, stating that no new offers would be extended, indicated that the original offer was still open. Esurance moved for reconsideration, which the trial court denied. This appeal followed.

Esurance argues that the trial court erred when it enforced a purported settlement agreement because Esurance's offer had not been accepted and was terminated by Ingram's counteroffer; thus, no enforceable contract was formed. We agree.

An agreement to settle a lawsuit is a contract and as such is governed by principles of contract construction and interpretation. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006) (citation omitted). Accordingly, the issue whether a legally binding and enforceable settlement agreement exists is reviewed de novo. *Id*.

A valid contract cannot be formed unless there is an offer and acceptance of the offer. *Id*. (citation omitted). But the acceptance of the offer must be unambiguous and in strict conformance with the offer otherwise no contract is formed. *Id*. at 452-453 (citation omitted). That is so because there must also be a meeting of the minds on all essential terms for an enforceable contract to be formed. *Id*. at 453.

> [B]ecause the offeror is entitled to receive what it is it has bargained for, if any provision is added to which the offeror did not assent, the consequence is not merely that the addition is not binding and that no contract is formed, but that the offer is rejected, and that the offeree's power of acceptance is thereafter terminated. [*DaimlerChrysler Corp v Wesco Distribution, Inc*, 281 Mich App 240, 247; 760 NW2d 828 (2008), quoting 2 Williston, Contracts (4th ed), § 6.11, pp 110–117.]

Esurance made an offer of $100,000 to resolve this claim during a settlement conference with the trial court. Ingram then made a $195,000 counteroffer. By making this counteroffer, Ingram rejected Esurance's $100,000 offer and also terminated his power of acceptance of that offer. Ingram concedes his counteroffer was a rejection of Esurance's initial $100,000 offer, but argues that Esurance revived its $100,000 offer when Esurance's counsel sent a text message to Ingram's counsel stating that Esurance did not wish to extend any new offers. Ingram argues that

Esurance's use of the phrase "new offers" indicates that the old offer was still open for acceptance. We disagree.

"An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Kloian*, 273 Mich App at 453 (quotation marks and citations omitted). Esurance sent the text after receiving multiple follow-up e-mails and a text from Ingram's counsel, inquiring whether Esurance was going to make a counteroffer to Ingram's $195,000 offer. Esurance's counsel responded, stating that Esurance would not extend any new offers at the moment. Given this context, the text by Esurance's counsel did not manifest a willingness to enter into a bargain. The purpose of the text was to inform Ingram's counsel that Esurance would not be extending a counteroffer to Ingram's $195,000 offer. Nothing in the text indicates Esurance was reviving or renewing the previous $100,000 offer, which was already terminated by Ingram's $195,000 counteroffer.

As stated above, "a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian*, 273 Mich App at 453. "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Calhoun Co v Blue Cross & Blue Shield of Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012) (quotation marks and citations omitted). There was no mutual assent because, from an objective standpoint, nothing in the language of the parties' correspondence indicates the parties had a meeting of the minds. Ingram's counteroffer rejected Esurance's $100,000 offer, and Esurance's counsel explicitly stated that Esurance was not interested in extending any offers in response to Ingram's $195,000 counteroffer.

"Michigan courts will not lightly presume the existence of an enforceable contract because, regardless of the equities in a case, the courts cannot make a contract for the parties when none exists." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014) (quotation marks and citation omitted). Because Ingram rejected Esurance's $100,000 offer, and Esurance never revived its $100,000 offer, no enforceable contract was formed as a matter of law. Accordingly, the trial court erred in granting plaintiff's motion to enforce the purported settlement agreement; no such agreement existed.[1]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Michelle M. Rick
/s/ Sima G. Patel

---

[1] Esurance alternatively argues that Ingram's power of acceptance was terminated due to lapse in time. Because Ingram's power of acceptance was terminated when Ingram made a counteroffer, we need not address this argument.

-3-